Approved:  _____     **ORIGINAL**
           MATTHEW J.C. HELLMAN              **19MAG 5950**
           Assistant United States Attorney

Before:    THE HONORABLE ROBERT W. LEHRBURGER
           United States Magistrate Judge
           Southern District of New York

------------------------------------X
                                    :   COMPLAINT
UNITED STATES OF AMERICA            :
                                    :   Violation of
           - v. -                   :   21 U.S.C. § 846
                                    :
ELIOT MARTINEZ,                     :   COUNTY OF OFFENSE:
     a/k/a "Bori,"                  :   BRONX
                                    :
           Defendant.               :
                                    :
------------------------------------X

SOUTHERN DISTRICT OF NEW YORK, ss.:

    JOSEPH KING, being duly sworn, deposes and says that he is a Task Force Officer with the Drug Enforcement Administration ("DEA"), and charges as follows:

**COUNT ONE**
(Conspiracy to Distribute Narcotics)

    1.   From in or about April 2019, through on or about June 24, 2019, in the Southern District of New York and elsewhere, ELIOT MARTINEZ, a/k/a "Bori," the defendant, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

    2.   It was a part and an object of the conspiracy that ELIOT MARTINEZ, a/k/a "Bori," the defendant, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

    3.   The controlled substance that ELIOT MARTINEZ, a/k/a "Bori," the defendant, conspired to distribute and possess with intent to distribute was one kilogram and more of mixtures

and substances containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 841(b)(1)(A).

(Title 21, United States Code, Section 846.)

The bases for my knowledge and the foregoing charge are, in part, as follows:

4. I am a Task Force Officer with the DEA. This affidavit is based on my personal participation in the investigation of this matter, my conversations with other law enforcement agents, my interviews of witnesses, as well as my examination of reports and records. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

5. Based on my own observations as part of the investigation, my conversations with other law enforcement officers, and my review of reports, I have learned the following, in substance and in part:

a. In or about April 2019, an individual ("CC-1") met in person with a cooperating witness ("CW-1") at a location in the Bronx, New York.[1] During that meeting, CC-1 stated, in sum and substance, that he could arrange a meeting between CW-1 and an individual who would provide distribution-level quantities of powder cocaine and heroin. CC-1 provided CW-1 with a phone number ("Target Number-1") to set up the meeting. CW-1 called an individual at Target Number-1 and set up a meeting.

b. On or about April 8, 2019, CW-1 traveled to a pre-arranged location in northern New Jersey for the purpose of meeting the individual known to CC-1 (the "April 8 Meeting").

---

[1] CW-1 pled guilty in New York State to narcotics offenses in 2019 pursuant to a cooperation agreement. Since entering that cooperation agreement, CW-1 has provided assistance to law enforcement agents. The information provided by CW-1 in connection with this investigation has been deemed credible by law enforcement agents and is corroborated by other evidence, including video and audio recordings, and surveillance conducted by law enforcement agents.

After arriving at that location, CW-1 waited in his car. A short time later, an individual later identified as ELIOT MARTINEZ, a/k/a "Bori," the defendant, arrived in a four-door Nissan car ("Vehicle-1"), parked, and approached CW-1's car holding a plastic bag. MARTINEZ entered CW-1's car on the passenger side, left the plastic bag in CW-1's car, and then left CW-1's car and the location. CW-1 provided the plastic bag to law enforcement, which observed the bag contained a compressed brick of a white powdery substance. Law enforcement weighed the brick and found that it weighed approximately 1 kilogram. The substance was tested and determined to contain cocaine.

        c. On or about April 12, 2019, law enforcement obtained a judicial order authorizing law enforcement to obtain prospective location information pertaining to Target Number-1. Based on information obtained pursuant to that order and other investigation, law enforcement performed surveillance on ELIOT MARTINEZ, a/k/a "Bori," the defendant. During that surveillance, law enforcement observed MARTINEZ visit a specific warehouse location located in New Jersey (the "Warehouse").

        d. On or about June 21, 2019, law enforcement conducting surveillance observed MARTINEZ approach the Warehouse in Vehicle-1. MARTINEZ was alone in Vehicle-1, but appeared to be accompanied by a second vehicle, a pick-up truck (the "Pickup"). Law enforcement observed that the driver of the Pickup was alone. MARTINEZ circled the Warehouse several times in a pattern law enforcement believed, based on their training and experience, to be intended to detect or evade law enforcement surveillance. After MARTINEZ waited a short period of time outside the Warehouse with the Pickup, law enforcement observed MARTINEZ and the Pickup leave the area of the Warehouse together.

        e. On or about June 24, 2019, law enforcement conducting surveillance observed MARTINEZ approach the Warehouse in a two-door Toyota car ("Vehicle-2"). MARTINEZ appeared to be unaccompanied and was observed circling the Warehouse several times in Vehicle-2 in a pattern law enforcement believed to be intended to detect or evade law enforcement surveillance. Several hours later, law enforcement observed MARTINEZ return in Vehicle-2. MARTINEZ was alone in Vehicle-2, but appeared to be accompanied by a second vehicle, a van (the "Van"). Law enforcement observed that the driver of the Van was alone and was a different individual than the driver of the Pickup. MARTINEZ again circled the Warehouse several times in a pattern

law enforcement believed to be intended to detect or evade law enforcement surveillance. After a short period of time, MARTINEZ parked Vehicle-2 a short distance from the Warehouse, in view of the Van, while the Van approached the Warehouse and pulled up to a loading dock. At the loading dock, workers at the Warehouse loaded a pallet (the "Pallet") into the rear of the Van, after which the Van pulled away from the Warehouse.

      f. As the Van pulled away from the Warehouse, MARTINEZ, driving Vehicle-2, began to move toward the Van. As Vehicle-2 and the Van drove away from the Warehouse, law enforcement stopped Vehicle-2 and the Van.

      g. After stopping the Van, law enforcement obtained consent from the driver of the Van to search the Van and its contents. Law enforcement conducted a search of the Van, in part by a DEA agent who is a certified narcotics detection canine handler ("K9 Agent-1"). During the search of the Van and its contents, K9 Agent-1 exposed the exterior and interior of the Van to his trained canine ("K9-1") for inspection and review. During the course of K9 Agent-1 and K9-1's inspection and review, K9-1 indicated a positive alert for the presence of controlled substances in the interior of the Van, specifically, in the area of the Pallet.

      h. Law enforcement then searched the Pallet and discovered, located inside the Pallet and its contents, approximately 33 wrapped, brick-shaped packages (the "Packages"), consistent with the packaging of narcotics, each containing a white powdery substance.

      i. After stopping Vehicle-2, law enforcement observed MARTINEZ to have three cellular telephones, one of which appeared to have been recently crushed, bent, and broken repeatedly. MARTINEZ was placed under arrest.

      j. Law enforcement agents conducted a field test of the white powdery substance found inside one of the Packages and it tested positive for the presence of cocaine. Law enforcement weighed the Packages and found they collectively weighed approximately 33 kilograms.

      k. After MARTINEZ was arrested, he was read his *Miranda* rights. MARTINEZ waived his rights, and stated, in substance and in part, the following:

          i. MARTINEZ stated that he knew he was at the

Warehouse to pick up the Pallet, and that he knew the Pallet in the Van contained controlled substances.

  ii. MARTINEZ further stated that that he was going to be paid $1,500 to pick up the Pallet and bring it to another location in New Jersey.

  iii. MARTINEZ further stated that he had picked up a pallet he knew to contain controlled substances from the Warehouse on at least one prior occasion, in May 2019, and brought that pallet to a location in New Jersey close to New York City. MARTINEZ further stated that he knew the controlled substances were thereafter distributed in New York City.

  iv. MARTINEZ further stated that he was at the Warehouse on or about June 21, 2019, and that he saw an individual he believed to be law enforcement waiting at the Warehouse, and that MARTINEZ left the area of the Warehouse after seeing that individual.

  WHEREFORE, deponent respectfully requests that ELIOT MARTINEZ, a/k/a "Bori," the defendant, be imprisoned or bailed, as the case may be.

_____
JOSEPH B. KING
Task Force Officer
Drug Enforcement Administration

Sworn to before me this
25th day of June, 2019

_____
THE HONORABLE ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

5